# **EXHIBIT D**

# COLLECTIVE BARGAINING AGREEMENT

BETWEEN

## 63 West LLC

AND

## AMALGAMATED LOCAL 1931
## EASTERN STATES JOINT BOARD
## ALF-CIO

EFFECTIVE: June 1, 2019

EXPIRATION: MAY 31, 2022

THIS AGREEMENT, made and entered into this 12th day of August, 2019, by **63 West,** 247 West 64th Street, New York, NY 10023, hereinafter designated as the "Employer" and **AMALGAMATED LOCAL 1931, Eastern States Joint Board** affiliated with the **INTERNATIONAL UNION OF ALLIED, NOVELTY AND PRODUCTION WORKERS,** its successors and assigns, hereinafter designated as the "Union".

WHEREAS, the Employer is engaged in the business of

APARTMENT:

**63 West,** 247 West 64th Street, New York, NY 10023
and

WHEREAS, the Union represents the majority of the employees of the Employer at this residential building and

WHEREAS, the parties hereto desire to cooperate in establishing conditions in the Employer's residential building which will tend to secure to the workers a living wage, improve the standards of labor, abolish unfair competition insofar as labor is concerned, and provide methods for a fair and peaceful adjustment of all disputes that may arise between the parties hereto.

NOW, THEREFORE, in consideration of the mutual promises and obligations herein assumed and made, the parties hereby agree as follows:

**GOOD FAITH:**

Art.1. The Employer and the Union hereby agree that they will in good faith live up to the provisions of the Agreement, and that this Agreement is entered into by the Union and the Employer on behalf of the employees of the Employer, now or hereafter to be employed, in the bargaining unit as defined in Article 2 hereof.

**RECOGNITION:**

Art.2. the Employer agrees to and does hereby recognize the Union as the sole and exclusive bargaining agent for all full and regular part time employees including front desk, housekeeping, bell-person, engineers and porters and reception, excluding clerical and office employees, sales employees, managers, guards, professional employees and supervisors as defined in the Labor Management Relations Act of 1974.

**UNION SECURITY:**

Art. 3.  It shall be a condition of employment that all employees covered by this AGREEMENT who are members of the Union in good standing on the execution or effective date of this AGREEMENT whichever is later, shall remain members in good standing, and those who are not members on the execution or effective date of this AGREEMENT whichever is later, shall on the thirtieth day following the execution or effective date of this AGREEMENT, whichever is later, become and remain members in good standing in the Union.  It shall also be a condition of employment that all employees covered by this AGREEMENT and hired on or after its execution or effective date, whichever is later, shall after thirty (30) days from the beginning of such employment and for the term of this AGREEMENT, become

2

and remain members in good standing in the Union. For the purpose of this Article, an Employee shall be considered a member of the Union in good standing if he/she tenders his/her periodic dues and initiation fee uniformly required as a condition of membership.

The failure of any person to become a member of the Union at the required time shall obligate the Employer, upon notice from the Union to such effect and to the further effect that union membership was available to such person on the same terms and conditions generally available to other members, to forthwith discharge such person. Further, the failure of any person to maintain the person's Union membership in good standing as required herein shall, upon written notice to the employer by the Union to such effect, obligate the Employer to discharge such person. The Union shall indemnify the Employer for any claim related to the discharge asked by the Union pursuant to this provision.

In the event of any change in the law during the terms of this Agreement, the Employer agrees that the Union will be entitled to receive the maximum Union security which may be lawfully permissible.

No provisions of this Article shall apply in any state to the extent that it may be prohibited by State Law. If under applicable State Law, additional requirements must be met before any such provisions may become effective, such additional requirements shall first be met.

If any provisions of this Article are invalid under the law of any state wherein this Agreement is executed, such provisions shall be modified to comply with the requirements of State Law or shall be re-negotiated for the purpose of the adequate replacement. If such negotiations shall not result in a mutually satisfactory agreement, the Union shall be permitted all legal or economic recourse.

**PROBATIONARY EMPLOYEES:**

Art 4. All newly hired employees shall be on probation for a period of 120 working days following their date of hire ("Probationary Period"). Probationary employees who are discharged shall not be subject to the grievance and arbitration provisions of this Agreement.

**CHECK OFF:**

Art.5. The Employer agrees to deduct, on the first pay day of each month, from the salary or wages of the employees covered by this agreement such Union dues and initiation fees as the Union, by written notice, advises the Employer are regularly due as such from the employees The Employer will turn such monies over the Union on or before the **TENTH DAY** of each month, covering the current month in advance, together with its listing of the employees and amount, from whom such monies have been deducted, provided, however, that the Employer will make such deductions only from wages of those employees who submit individual written authorization the Employer directing and authorizing the Employer to make such deductions.

Any monies deducted from the employees are to remain the property of the Union and in no event shall the Employer be permitted to use said monies for any other purpose.

**SICK LEAVE:**

  **Art.6.** All employees covered by this Agreement and employed by the Employer shall receive the following sick leave:

  Each employee is entitled to five (5) sick days per calendar year (from 1st payroll to last payroll. New hires shall accrue one hour of sick leave for every thirty hours worked to a maximum of forty hours in the first calendar year that they work. Sick days do not carry over. The employees have to pass three (3) months' probation period in order to receive sick days prorated from the hire date.

**LUNCH REST PERIODS:**

  **Art.7.** All employees shall receive a minimum of thirty (30) minutes unpaid for lunch following four (4) fours of work, or as close to the middle of their shift as possible. All employees must take their thirty-minute break unless they receive prior permission from a supervisor to work during their breaks. In the event of an emergency where employees cannot notify their supervisors, the employees must notify their supervisors as soon as practicable after the break that they worked during the break. All employees shall receive two fifteen-minute breaks, one in the A.M and one in the P.M., provided the employee works a minimum of (6) six hours in any given day.

**BEREAVEMENT PAY:**

  **Art. 8** Full-time employees shall be entitled to three (3) days bereavement for the death of a spouse, child, parents and sibilings. A death certificate may be required.

**HOURS OF WORK:**

  **Art. 9.** Each regular shift shall consist of not more than seven and a half (7 1/2) hours per day. The regular work week shall consist of thirty-seven and a half (37 1/2) total hours worked from Friday through Thursday.

  Employees who work less than thirty hours a week shall receive pro-rated benefits but shall not receive any health insurance. Full-time employee is defined as an employee who works thirty (30) hours or greater.

**OVERTIME:**

  **Art. 10.** Work performed in excess of forty (40) hours per week shall be considered as overtime work and shall be paid for at the rate of time and one-half the regular rate of pay. All overtime shall be voluntary and no employee shall be discriminated against for refusing to work overtime.

  The Employer will make every reasonable effort to distribute overtime equally among its employees in their respective classifications. The Employer agrees to make available to the Union a record of such overtime work for examination by the Union representative.

**HOLIDAYS:**

  **Art. 11.** The employer will request its employees to work on the foregoing holidays as needed and shall pay them for such holidays:

4

| | |
|---|---|
| New Year's Day | Memorial Day |
| Christmas Day | Independence Day |
| President's Day | Labor Day |
| Thanksgiving Day | |

To be eligible for holiday pay, the employee must work his or her scheduled day before and after the said holiday, unless that employee is on lay-off.

Any employee working on a holiday listed above will be paid his or her regular rate of pay for hours worked plus an additional day off with pay.

Holiday pay for the employees who do not work on the foregoing holidays shall be equal to a full day pay. Employees must be out of their Probationary Period to be eligible for Holiday pay.

a) If any of the above holidays shall fall within the employee's vacation period, his vacation shall be extended one (1) day with pay or be paid an extra day's pay in lieu of any extra day off.

**VACATIONS:**

Art.12. the Employer shall grant vacation with pay for all of its employees in accordance with the provisions of this paragraph as set forth below. Vacation is calculated from anniversary to anniversary, excluding voluntary time off or laid off.

All employees shall receive not less than his prorated vacation provided he or she meets the following eligibility:

All employees employed by the Employer for one (1) year or more, shall receive one (1) week' vacation with pay.

All employees employed by the Employer for five (5) years or more, shall receive two (2) weeks vacation with pay.

Employees who have been employed for one (1) year or more, who are laid off at any time during the term of this Agreement, shall be paid a pro-rata vacation at the time of their job severance. Such a pro-rata vacation shall be based upon the vacation provisions above set forth.

**WAGES AND WAGE INCREASES:**

Art.13. a) Employees must be out of their probationary period to be eligible for a wage increase.

b) Effective as of June 1, 2019 there shall be a general wage increase of fifty ($.50) cents per hour for all eligible employees covered by this Agreement.

c) Effective as of June 1, 2020 there shall be a general wage increase of fifty ($.50) cents per hour for all eligible employees covered by this Agreement.

d) Effective as of June 1, 2021 there shall be a general wage increase of fifty ($.50) cents per hour for all eligible employees covered by this Agreement.

e) Increases in wages granted by virtue of this Agreement shall be given to the employees on dates specified herein. Employees shall receive increases in wages decreed by the New York State and/or Federal Agencies having jurisdiction thereof during the terms of this Agreement which have to be paid so that employees are paid the minimum wage.

**HEALTH INSURANCE:**

Art.14. Employees, who regularly work thirty hours or more a week, are eligible for Employer sponsored health insurance after ninety (90) days of employment. Any change in the Employer sponsored health insurance must be discussed with the Union prior to implementation.

**GRIEVANCE PROCEDURE:**

Art.15. A grievance is hereby jointly defined to be any controversy, complaint, misunderstanding, or dispute involving the interpretation and application of this Agreement.

**SECTION 1:**

Any grievance arising between the Employer and the Union shall be settled in the following manner:

a) The aggrieved employee or employees must present the grievance to the Shop Steward within twenty-four (24) hours after the reason for the grievance has occurred, except that no time limit shall apply in case of violation of wage provisions of this Agreement. If a satisfactory settlement is not effected with the foreman within five (5) working days, the Shop Steward or the employee shall submit such grievance in writing to the Employer. The Employer shall submit all grievances it has in writing to the Union.

b) Any Shop Steward shall be permitted to leave his work area to investigate and adjust the grievance of any employee within his jurisdiction, after notification to his Supervisor. Employees shall have the Shop Steward or a representative of the Union present during the discussion of any grievance with representatives of the Employer, if the employee so requests such representation.

c) The Business Representative and the Employer shall then meet to discuss any grievance between the parties within five (5) working days after a grievance has been submitted in writing to the other party. A decision regarding the grievance must be made by the party to whom the grievance has been submitted within five (5) working days.

d) If the Employer fails to comply with any settlement of the grievance or fails to comply with the procedures of this Article, the Union has the right to take all legal and economic action to enforce its demands through arbitration

e) It is mutually agreed to by and between the parties that, in the event that any issue arises between the Employer and the Union regarding an issue that cannot be resolved in accordance with the foregoing grievance procedure, the aggrieved party within thirty days of the meeting in paragraph (c) may submit the grievance to arbitration. The parties designate J.J. Pierson and Aaron Shiftman as the arbitrator. These two arbitrators shall as the arbitrator on a rotating basis. The parties may agree to use an arbitrator other than J.J. Pierson or Roger Maher. In the event J.J. Pierson and Aaron Shiftman cannot serve as an arbitrator and the parties cannot agree upon an arbitrator, the grievance shall be submitted to the American Arbitration Association.

**SECTION 2.**

Expenses of the Arbitration selected or appointed shall be borne equally by the Employer and the Union, unless Arbitration is requested because of the Employer's failure to make remittances under Article 4 of this Agreement as required by this Agreement, in which event the Employer shall pay the total cost.

**SECTION 3.**

The Arbitrator shall not have the authority to amend or modify this Agreement or establish new terms or conditions under this Agreement. The Arbitrator shall determine any questions or arbitrability. In the event the position of the Union is sustained regarding a discharge or suspension, the aggrieved party shall be entitled to all the benefits of this Agreement which would have accrued to him had there been no grievance in the event the arbitrator awards full back pay and benefits.

**SECTION 4.**

Both parties agree to accept the decision of the Arbitrator as final and binding. If the Employer fails to comply with the award of the Arbitrator or with the procedures of this Article, the Union has a right to take all legal and economic action to enforce compliance.

**SECTION 5.**

The parties agree that a goal of this Agreement is to ensure compliance with all federal, state, and local wage hour law. Accordingly, to ensure the uniform administration and interpretation of this Agreement in connection with federal, state, and local wage-hour and wage parity statutes and regulations, all claims brought by either the Union or employee all claims for wages and for a violation of wage laws, under the Fair Labor Standards Act, the New York State Wage Payment Law, and the New York Wage State Wage and Hour Law (including New York Department of Labor and Workforce Development regulations and wage orders), or any similar laws (federal, state or local), or regulations related to the payment of wages (collectively referred to as "Covered Statute") shall be subject to the grievance and

arbitration procedure described below as the sole and exclusive remedy of the employee for these claims that the employee has or every had. Notwithstanding the time limits to file a grievance under Article 15 of this Agreement, the statute of limitations to file a grievance concerning a dispute involving a claim for wages under a law or regulation shall be consistent with the applicable statutory statute of limitations and shall be submitted in writing to the Company. The Arbitrator shall apply appropriate law in rendering decisions based claims under the Covered Statutes, including awarding statutory remedies and penalties.

     b) In lieu of the grievance procedure in Section 1 of this Article, the parties will begin the grievance process by having a meeting between the union and the company to resolve any dispute under this section and will follow the below process in as the grievance and arbitration procedure for handling these disputes.

     c) Whenever the parties are unable to resolve a grievance alleging a violation of any of the Covered Statutes, before the matter is submitted to arbitration, the dispute shall be submitted to mandatory mediation. The parties hereby designate Robert Herzog and Steven Kasarda. as Mediators for such disputes, who shall serve as a rotating basis. Such mediation shall be requested no more than thirty (30) calendar days following exhaustion of the grievance procedure. Following submission of the dispute to mediation, the parties, with the assistance of the Mediator shall establish such procedures as shall expeditiously advance the mediation process, including the scheduling of the exchange of relevant information, submission of position statements, and dates for mediation. In the absence of agreement, the Mediator shall determine such procedures. Once the matter has been submitted to mediation, the parties shall be obligated to produce relevant documents as requested by the other party and any objections to production shall be ruled on by the Mediator. The fees of the Mediator shall be shared equally by the Union and the Employer.

     d) No party may proceed to arbitration prior to completion of the mediation process as determined by the Mediator. In the event the Union seeks arbitration of a grievance subject to these procedures, the Union shall submit its demand for arbitration to the Employer and the Arbitrator within four (4) months following the Mediator's declaration that mediation has concluded. The Employer shall be obligated to produce relevant documents as requested by the Union and any objections to production shall be ruled on by the Arbitrator. Prior to hearing, if noticed, the parties shall also be entitled to depositions of relevant witnesses and any objections related to the depositions shall be ruled on by the arbitrator. The fees of the arbitrator shall be shared equally by the Union and the Employer. The Employer shall upon notice be entitled to take the deposition of any Employee seeking relief in such arbitration or any other relevant witness.

     e) In the event an employee has requested, in writing, that the Union process a grievance alleging a violation of the Covered Statutes and the Union declines to process a grievance regarding alleged violations of the Covered Statutes, through the grievance/mediation process or to arbitration following the conclusion of mediation, an Employee solely on behalf of herself, may submit her individual claim to mediation, or following the conclusion of mediation, to arbitration. Written notice of the employee's submission of the dispute to mediation and/or arbitration must be provided to the Employer, the Union, and the Mediator/Arbitrator within thirty (30) calendar days of written notice from the Union, as measured by postmark date, email date, facsimile date, or delivery/attempted delivery date (if such notice is served by overnight delivery service), that it has declined to process the dispute to mediation

8

and/or arbitration. Such claims may be presented by and on behalf of the individual employee only, with or without counsel. The Mediator/Arbitrator shall have no authority to consider class or collective claims or issue any remedy on a class basis. The fees and expenses of the Mediator/Arbitrator shall be shared equally by the employee and the Employer, unless the arbitrator finds a violation of any of the Covered Statutes, in which case the Employer shall pay the fees and expenses of the Arbitrator.

f) The parties agree not to contest court confirmation of an arbitration award rendered under this Article. Nothing herein shall require the Union or the Employer to indemnify the other party with respect to any finding by an arbitrator and/or court of competent jurisdiction that the Employer has violated any of the Covered Statutes.

g) All payroll and time records exchanged by the parties (i.e. Union, Employer or individual Employee) in mediation shall be deemed admissible in arbitration. All other information exchanged in mediation shall be deemed offered as part of a settlement negotiation and, pursuant to the Federal and New York State Rules of Evidence, shall not be admissible in any subsequent proceeding.

**SENIORITY:**

Art.16. a) The Employer recognizes the principle of seniority for the purpose of lay-off and rehiring. Seniority shall be that the last employee hired shall be the first employee laid off and the last employee laid off shall be the first employee rehired, unless specific skill is required.

b) It is agreed by the Employer and the Union that all Shop Stewards and officers of the Union have seniority over all employees for purposes of lay-off and recall provided they can do the work that is to be done.

c) Any employee who is laid off more than three (3) consecutive months shall lose his/her seniority. However, if he/she is rehired, such employee shall return with his original seniority.

d) The rights of seniority in re-employment shall be accorded to a laid-off employee prior to new employees being hired, provided such laid-off employee responded to a call to report for work not more than three (3) working days after notice has been sent to them by telephone or mail, return receipt requested, to his last known post office address.

e) Preference in assignment to shift work and choice of new jobs shall be given to employees having higher seniority.

f) Seniority rights to a laid off employees will continue to accumulate while he is laid off.

**NOTICE TO AND FROM THE UNION:**

Art.17. a) Starting with this Agreement, a Seniority list, including name, category, rate of pay, and staring date, shall be submitted to the Union, when requested by the Union.

b) Remittance sheets, including names, new employees, starting date, old employees' termination date, gross wages earned for the preceding month for each employee, the amounts of dues and initiation check-off, and for what monthly periods, shall be remitted once a month, within ten (10) days after the 1st day of each month, together with dues checks made payable for dues and initiation to **AMALGAMATED LOCAL 1931, AFL-CIO.**

c) For failure to remit monies due to the Union for dues and initiation fees before the 45th day of accrual, the Union, at its option, may charge a bookkeeping fee of 2% per month of any part thereof until is remitted, provided that not less than ten (10) days written notice of the proposed charge is given to the Employer and the Employer fails to remit within five (5) days.

f) If the Employer fails to notify the Union of the termination of an employee, for any reason, then in such event, the Employer shall be responsible for all monies, as if it collected same, to the Union for dues, initiation and contributions to all fringe benefit funds, if any, as described herein.

**SHOP STEWARD:**

Art.18. a) The Employer recognizes the right of the Union to designate one Shop Steward for each shift from among the Employees in the classifications covered by this Agreement. The authority of the Shop Steward so designated shall be limited to the following duties and activities:

1. The investigation, processing and presentation of grievances to the Employer or to the Employer's designated representative.

2. The transmission of such messages and information which shall originate with and are authorized by the Union, or its officers, provided such messages and information have been reduced to writing, or are of such routine nature that reduction to writing would be unreasonable or unnecessary.

b) The Shop Steward shall leave his/her assigned duties to perform the functions set forth in Article (18)(a)(1) and (2) above only after giving notice to his/her supervisor and only to the extent reasonably necessary to the performance of such functions.

c) The Shop Steward shall have no authority to take any action which may cause an interruption of the Employer's business. In the event the Shop Steward acts in violation of this provision, the Employer shall have the authority to impose proper discipline, including discharge, upon him/her.

d) Shop Steward Seniority: Subject to his ability to perform work, the Shop Steward so designated by the Union shall granted super-seniority solely for the purpose of layoff and recall from layoff provided the employee can perform the job.

**BULLETIN BOARD:**

Art.19. The Employer will provide the Union with a Bulletin Board in an appropriate location in the plant to be used by the Union for posting of all Union notices and literature.

## LIE DETECTOR TEST:

**Art.20.** The Employer shall not require, request or suggest that an employee or applicant for employment take a polygraph or any other form of lie detector test.

## NON-DISCRIMINATION:

**Art.21. Section 1:** a) Any and all disputes arising under this Article shall be subject to the jurisdiction of the grievance and arbitration provision of this contract as the sole and exclusive remedy of the employee for resolution of these disputes including, but not limited to, disputes made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Genetic Information Nondiscrimination Act, the federal Family and Medical Leave Act, 42 U.S.C. Section 1981, the New York Family Leave Act, the New York Law against Discrimination, New York Conscientious Employee Protection Act, and or any other similar laws, rules or regulations ("Covered Discrimination Statues"). Notwithstanding the time limits to file a grievance under Article 15 of this Agreement, the statute of limitations to file a grievance concerning a dispute involving discrimination under the discrimination laws shall be consistent with the applicable statutory statute of limitations. The arbitrator shall apply appropriate law in determining these discrimination claims, including awarding applicable statutory remedies and penalties. Decisions rendered in arbitration with respect to such disputes shall be final and binding.

b) In lieu of the grievance procedure in Section 1 of Article 15, the parties will begin the grievance process by having a meeting between the union and the company to resolve any dispute under this section and will follow the below process in as the grievance and arbitration procedure for handling these disputes.

c) Whenever the parties are unable to resolve a grievance alleging a violation of any of the Covered Statutes, before the matter is submitted to arbitration, the dispute shall be submitted to mandatory mediation. The parties hereby designate Robert Herzog and Steven Kasarda. as Mediators for such disputes, who shall serve as a rotating basis. Such mediation shall be requested no more than thirty (30) calendar days following exhaustion of the grievance procedure. Following submission of the dispute to mediation, the parties, with the assistance of the Mediator shall establish such procedures as shall expeditiously advance the mediation process, including the scheduling of the exchange of relevant information, submission of position statements, and dates for mediation. In the absence of agreement, the Mediator shall determine such procedures. Once the matter has been submitted to mediation, the parties shall be obligated to produce relevant documents as requested by the other party and any objections to production shall be ruled on by the Mediator. The fees of the Mediator shall be shared equally by the Union and the Employer.

d) No party may proceed to arbitration prior to completion of the mediation process as determined by the Mediator. In the event the Union seeks arbitration of a grievance subject to these procedures, the Union shall submit its demand for arbitration to the Employer and the Arbitrator within four (4) months following the Mediator's declaration that mediation has concluded. The Employer shall be obligated to produce relevant documents as requested by the Union and any objections to production shall be ruled on by the Arbitrator. Prior to hearing, if noticed, the parties shall also be entitled to depositions of relevant witnesses and any objections related to the depositions shall be ruled on by the

arbitrator. The fees of the arbitrator shall be shared equally by the Union and the Employer. The Employer shall upon notice be entitled to take the deposition of any Employee seeking relief in such arbitration or any other relevant witness.

e) In the event an employee has requested, in writing, that the Union process a grievance alleging a violation of the Covered Statutes and the Union declines to process a grievance regarding alleged violations of the Covered Statutes, through the grievance/mediation process or to arbitration following the conclusion of mediation, an Employee solely on behalf of herself, may submit her individual claim to mediation, or following the conclusion of mediation, to arbitration. Written notice of the employee's submission of the dispute to mediation and/or arbitration must be provided to the Employer, the Union, and the Mediator/Arbitrator within thirty (30) calendar days of written notice from the Union, as measured by postmark date, email date, facsimile date, or delivery/attempted delivery date (if such notice is served by overnight delivery service), that it has declined to process the dispute to mediation and/or arbitration. Such claims may be presented by and on behalf of the individual employee only, with or without counsel. The Mediator/Arbitrator shall have no authority to consider class or collective claims or issue any remedy on a class basis. The fees and expenses of the Mediator/Arbitrator shall be shared equally by the employee and the Employer, unless the arbitrator finds a violation of any of the Covered Statutes, in which case the Employer shall pay the fees and expenses of the Arbitrator.

f) The parties agree not to contest court confirmation of an arbitration award rendered under this Article. Nothing herein shall require the Union or the Employer to indemnify the other party with respect to any finding by an arbitrator and/or court of competent jurisdiction that the Employer has violated any of the Covered Statutes.

g) All records exchanged by the parties (i.e. Union, Employer or individual Employee) in mediation shall be deemed admissible in arbitration. All other information exchanged in mediation shall be deemed offered as part of a settlement negotiation and, pursuant to the Federal and New York State Rules of Evidence, shall not be admissible in any subsequent proceeding.

**Section 2:** For any grievance properly submitted to arbitration under the Grievance and Arbitration provisions of this Agreement, the Parties hereby expressly authorize the Arbitrator to decide any alleged unfair labor practice issues in the underlying arbitration case, including whether or not either Party in the underlying arbitration case has committed a statutory violation of the National Labor Relations Act. The Parties agree to submit any such alleged statutory violation(s) to the Arbitrator for decision, and also shall submit all factual information to the Arbitrator necessary to allow the Arbitrator to render an informed and adequate decision on any such alleged statutory violation(s).

**SAFETY AND SANITARY CONDITIONS:**

**Art.22.** The Employer shall furnish and maintain safe and healthful sanitary conditions, including clean and adequate locker accommodations, washing facilities and toilets.

**VISITATIONS:**

**Art.23.** Union representatives shall be given the right to enter the premises at all reasonable times for the purpose of investigating grievances and to secure the enforcement of the contract and for such other purposes as may be necessary; provided, however, that prior to entering the property they shall first advise the front office of their presence and intention to enter the property.

**LEAVE OF ABSENCE:**

**Art.24.** Any employee upon application in writing may be granted a leave of absence without pay not to exceed one (1) month because of official union business with Employer's approval. The Employer shall comply with applicable laws regarding leaves of absences, including for personal illness, for illness in his/her immediate family and for disabilities.

**EXISTING PRACTICE:**

**Art.25.** All benefits of employment in existence at the effective date of this Agreement and not modified by the Agreement shall be continued without modification. All work place rules and policies contained in the employee's handbook will be strictly enforced.

**NO STRIKE-NO LOCKOUT:**

**Art. 26.** During the term of this Agreement the Employer agrees that it will not declare or authorize a lockout unless the Union fails to comply with an arbitration award within an arbitration within seven (7) days after the award has been made, and the Union agrees that no strike shall take place unless the Employer fails to comply with an arbitration award within seven (7) days after the award has been made. Neither the Union nor its officers, agent or representative shall be liable for any acts of any person or any workers participating in any strike or work stoppage unless such act or strike or work stoppage has been expressly authorized by the Union and in conformance with the provisions of the Constitution of the Union and the provisions of the International Union Constitution. The parties further agree that any strike, slow down or stoppage not authorized as herein specified shall not be deemed a violation of this Agreement.

In the event of an unauthorized slow down or work stoppage the Union agrees within twenty-four (24) hours after receipt of notice thereof from the Employer solely to endeavor in good faith to bring about a return to work of its members who have stopped work. Upon failure of the employees to return to work within the said twenty-four (24) hours, the Employer may take appropriate action with respect to such employee or employees. Compliance by the Union in good faith herewith shall be deemed full compliance with the Union's obligation hereunder.

**TRANSFERS:**

**Art.27.** Employees performing work in one classification and transferred to perform work in a classification for which the wage rate is lower than that of the original classification, shall receive pay at the rate set forth in their original classification. Employees required to do work in a classification for which there is a higher rate of pay shall receive the higher rate of pay for work performed in such classification.

**DISCHARGES:**

   **Art. 28.** No post-probationary employee shall be discharged except for just and sufficient cause. In the event any employee engages in the following conduct, it shall be grounds for immediate discharge and shall be deemed to be just and sufficient cause; however, any employee, if he is discharged shall be granted an interview with his Shop Steward.

  a) Theft of Employer property.
  b) Wanton destruction of Employer property.
  c) Drunkenness on the job.
  d) Excessive lateness and absenteeism.
  e) Fighting.
  f) Insubordination.
  g) Selling or using drugs.
  h) Gambling.
  i) Refusal to do a prescribed job.
  j) Harassment of any kind towards management or co-workers or guests.

In the event of discharge for any of the foregoing reasons the Employer shall forthwith give in written notice to the Union through its chief steward of said discharge.

**COLLECTIVE BARGAINING:**

   **Art.29.** The Employer agrees that it will negotiate with the Union during the term of this Agreement concerning any matter involving the wages, hours and working conditions of the employees, which is not specifically provided for in this Agreement and which is not subject of any grievance.

**PROTECTION OF RIGHTS:**

   **Art.30.** It shall not be a violation of this Agreement, and shall not be cause for discharge or disciplinary action, in the event an employee: (1) refuses to enter upon any property of his/her Employer involved in a lawful primary labor dispute or refuses to go through or work behind any lawful primary picket lines at his/her Employer's places of business, including picket lines of Union parties to this Agreement.

**ASSIGNABILITY:**

   **Art.31.** In the event of a closing or a sale and the new owner does not assume this Agreement, the Employer and the Union agree to pay severance to employees covered by this Agreement at a rate of 5 days' pay for every year of service.

**EFFECTIVE DATE:**

Art.32. All the terms and conditions of this Agreement shall be effective as of June 1, 2019 except as otherwise indicated.

**MILITARY SERVICE:**

Art.33 All military leaves shall be as provided by law. In any event, employees upon returning from military services shall be restored to their former position at the prevailing rate of pay. On the basis of seniority, and the time spent in military service is to be considered as time actually employed by the Employer. Re-instatement, however, must be applied for within ninety (90) days after being honorably discharged or within the time provided by applicable law, and the applicant must be physically able to work.

**DISCIPLIINE:**

Art.34 a) All warning notices shall be sent to the Union.

b) Warning notices shall not be held on an employee's record more than two (2) years from the date of the first warning notice.

**MODIFICATION OF AGREEMENT:**

Art.35. Neither the Employer nor any individual or group of employees shall have the right to modify or waive any of the provisions of this Agreement. The Employer will not enter into any individual agreement or arrangement with any of its employees covered by this Agreement. Any modification must be in writing duly executed by an authorized agent of the Employer and by the President, Secretary-Treasurer or Director of the Union. The Union may request that all negotiations for modification be held in the presence of a Union negotiating Committee during regular working hours.

**LOST TIME PAY:**

Art.36. Should an employee be injured at the work site and is unable to continue working as a result of the injury, he/she shall be paid for the entire day. No employee shall lose his/her job as the result of such injury. If he is physically able to perform, after he has recovered from the injury, he shall be entitled to resume his job.

**SEPARABILITY:**

Art.37. It is understood and agreed that if any provision of the Agreement or the application of such provision to any person or circumstances shall be held invalid, the remainder of this Agreement or the application of such provision to other persons or circumstances shall not be affected thereby.

**DURATION:**

**Art. 38.** The foregoing Agreement between the Employer and the Union shall continue in full force and effect from June 1, 2019` to May 31, 2022, and shall be automatically renewed from month to month thereafter unless at least sixty (60) days prior to any expiration date either party desiring to terminate or modify this Agreement shall so notify the other party in writing.

**PENSION FUND:**

**Art. 39.** The Union and the Employer, under collective bargaining agreement with the Union, have established a Pension Fund, which is jointly administered by Management, and Union Trustees pursuant to the Indenture of Trust.

Effective June 1, 2019, the Employer shall contribute to the Pension Fund $44.00 per month from the Employer's payroll for all employees covered by this agreement

Effective June 1, 2020, the Employer shall contribute to the Pension Fund $61.00 per month from the Employer's payroll for all employees covered by this agreement

Effective June 1, 2021, the Employer shall contribute to the Pension Fund $78.00 per month from the Employer's payroll for all employees covered by this agreement

The Employer shall be responsible for payment to the Pension Fund up to ninety days for any employee on an authorized leave of absence, sick leave, compensation, maternity leave, or disability.

The Employer shall pay to the Pension Fund for all employees on a temporary lay-off not to exceed ninety (90) days.

Holiday and vacation time shall be considered time worked for the purpose of this Article at the rate of eight (8) hours per day.

The Employer shall forfeit all rights under this agreement and the employees may cease to work if the Employer fails to pay his contributions, as provided above.

The Employer will forward to the Amalgamated Local 298 Pension Fund a list of employees at the same time as the remittances are forwarded to the Fund, as provided above.

63 West                                              AMALGAMATED LOCAL 1931

BY: _____            BY: _____