UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NELSON PENA,

                              Plaintiff,                          20-CV-7039 (JPO)

            -v-                                              OPINION AND ORDER

220 EAST 197 REALTY LLC, et al.,

                              Defendants.

J. PAUL OETKEN, District Judge:

Nelson Pena brings suit against 220 East 197 Realty LLC and 63 West L.L.C.

("Defendants"), alleging violation of the Fair Labor Standards Act of 1938, 29 U.S.C § 201 *et*

*seq.* ("FLSA"), and the New York Labor Law ("NYLL").  Defendants have moved to compel

arbitration and to dismiss the complaint for failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6).  For the reasons that follow, the motion is granted in part, and the case is

stayed pending arbitration.

I.      **Background**

The following facts, drawn from the complaint, are presumed true for the purposes of this

motion.  (*See* Dkt. No. 1 ("Compl.").)

Defendants 220 East 197 Realty LLC ("220 East") and 63 West L.L.C. ("63 West") are

New York limited liability companies "engaged in the business of hotel management and

ownership."  (Compl. ¶¶ 9-10, 14.)  From 2014 to April 2020, Defendants employed Pena, a

resident of the Bronx, New York, in several of their hotels as a handyman/laborer.  (Compl. ¶¶ 8,

16-17.)  As part of this job, Pena performed "physical and manual tasks," including "painting,

repairs and construction." (Compl. ¶ 17.)  Pena worked approximately 43 to 52 hours a week and was paid at a regular rate of roughly $15 per hour.  (Compl. ¶¶ 18, 20.)

During the time he worked for Defendants, Pena alleges that he was not paid for "all hours worked in a week[,] including non-overtime and overtime hours."  (Compl. ¶ 19.) Defendants had a policy of automatically deducting thirty minutes each day from Pena's work time for meal breaks, but Pena alleges that he never received a "bona fide meal break" due to the demands of the job.  (*Id.*)  As a result, Pena alleges that he is owed wages, including overtime wages, for approximately 2.5 to 3 hours per week.  (*Id.*)  Additionally, Pena alleges that he was not paid any wages for his last two weeks on the job and "is owed for about 86-100 hours" of work.  (Compl. ¶ 24).

Pena brought this action on August 30, 2020, alleging violations of the FLSA and the NYLL.  (*See* Compl.)  Defendant has moved to compel arbitration and to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (*See* Dkt. No. 12.)

## II.    Discussion

The Court first considers whether the parties are bound by a mandatory arbitration clause. If they are, the Court need not proceed further.  *See, e.g.*, *Cour Pharms. Dev. Co., Inc. v. Phosphorex, Inc.*, No. 20-CV-4417, 2021 WL 1062568, at *5 (S.D.N.Y. Mar. 19, 2021) (staying case in light of mandatory arbitration clause).

In determining whether parties have contractually bound themselves to arbitrate a dispute, courts apply a "standard similar to that applicable for a motion for summary judgment, drawing all reasonable inferences in favor of the non-moving party."  *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 221 (2d Cir. 2019) (internal quotation marks and citation omitted).  As part of this inquiry, courts ordinarily ask four questions: "(1) whether the parties agreed to arbitrate; (2) the scope of the arbitration agreement; (3) whether the plaintiff's federal

statutory claims are nonarbitrable; and (4) if some, but not all of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Id.* at 221-22 (internal quotation marks and citation omitted). In answering these questions, courts are mindful of the fact that the Federal Arbitration Act espouses "a liberal federal policy favoring arbitration agreements," reflecting Congress's "recognition of the desirability of arbitration as an alternative to the complications of litigation." *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 830 (2d Cir. 1988) (internal quotation marks and citation omitted)

Defendants argue that Pena is bound by three mandatory arbitration clauses: one in a 2013 agreement between Pena and 220 East; one in a 2020 agreement between Pena and 63 West; and one in a 2019 collective bargaining agreement between 63 West and a union — Amalgamated Local 1931 — representing 63 West employees.[1] (*See* Dkt. No. 15 at 15-22; Dkt. No. 14–3.) The Court focuses its inquiry on the last of these, as the parties agree that the collective bargaining agreement "prevails over individual agreements." (*See* Dkt. No. 21 at 13.)

---

[1] Defendants argue, and Pena does not dispute, that 220 East may compel Pena to arbitrate even though the company is not a signatory to the collective bargaining agreement. The Court agrees. "[U]nder principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the parties, the contracts they signed, and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *In re Currency Conversion Fee Antitrust Litig.*, No. 04-CV-5723, 2005 WL 2364969, at *4 (S.D.N.Y. Sept. 27, 2005) (internal quotation marks and citation omitted). That logic holds here. 63 West and 220 East jointly employed Pena, and Pena has brought the same claims against both employers. (Compl. ¶¶ 12, 16.) The dispute 220 East seeks to arbitrate is therefore "intimately founded in or intertwined with the underlying agreement contemplating arbitration." *Id.* at *6 (internal quotation marks and citation omitted). Accordingly, 220 East may enforce the arbitration provision in the collective bargaining agreement. As this Court has held, "[t]o hold otherwise would permit near-identical labor law claims against a joint employer and a direct employer to proceed simultaneously in separate forums, even though such claims carry joint and several liability." *Silvester v. Samsung Elecs. Am., Inc.*, No. 20-CV-4002, 2021 WL 1063341, at *1 (S.D.N.Y. Mar. 18, 2021).

To determine whether the arbitration provision in the collective bargaining agreement binds Pena, the Court must first ask the threshold question of "'whether the parties … indeed agreed to arbitrate' at all." *Sollinger v. SmileDirectClub, LLC*, No. 19-CV-5977, 2020 WL 774135, at *2 (S.D.N.Y. Feb. 18, 2020) (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)). This is a question of "state contract law." *Abdullayeva*, 928 F.3d at 222 (internal citation omitted); *see also M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015) (noting that courts "interpret collective-bargaining agreements … according to ordinary principles of contract law"). In New York, "the touchstone of contract is mutual manifestation of assent, whether by written or spoken word or by conduct." *Sollinger*, 2020 WL 774135, at *2 (cleaned up). "The terms of an agreement provide the best evidence of what the parties intend, and a written agreement that is complete, clear, and unambiguous on its face must be enforced according to the plain meaning of its terms." *Abdullayeva*, 928 F.3d at 222 (cleaned up).

Here, the terms of the collective bargaining agreement evince a clear intent to subject wage disputes to arbitration. Section 5 of the agreement states that claims brought under certain statutes, including the "Fair Labor Standards Act, the New York State Wage Payment Law, and the New York [] State Wage and Hour Law," "shall be subject to the grievance and arbitration procedure described below as the sole and exclusive remedy of the employee for these claims that the employee has or ever[] had." (Dkt. No. 14–3 § 5.) This language, on its face, "simply does not allow an employee to choose to proceed in a judicial forum." *Abdullayeva*, 928 F.3d at 224.

Pena argues that he "was not … aware that he was in a union" and therefore could not be bound by the terms of the collective bargaining agreement. (Dkt. No. 18 at 11.) But Pena's supposed lack of awareness is irrelevant. Under the terms of the agreement, the union is

recognized as the "sole and exclusive bargaining agent for all full and regular part-time employees."  (Dkt. No. 14–3 art. 2.)  Even if Pena was not a member of the union at all — a fact that is never established definitively — the union was legally authorized to negotiate collective bargaining agreements on his behalf.  *See* 29 U.S.C. § 159(a) (stating that unions "selected for the purposes of collective bargaining by the majority of the employees," as appears to have been the case here, "shall be the exclusive representatives of all the employees … for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment"); *see also Prudential Ins. Co. of Am. v. Stella*, 994 F. Supp. 308, 315 (E.D. Pa. 1998) ("[A]n individual employee will be bound by the terms of a collective bargaining agreement even if not a union member."); *Bevills v. Merchants Fast Motor Lines, Inc.*, 876 F. Supp. 129, 130 (N.D. Tex. 1995) ("Collective bargaining agreements govern all employees within the bargaining class, regardless of actual union membership." (citing *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 200-01 (1944))).  Pena also argues that he cannot be bound by the arbitration provision because he was never provided with a copy of the agreement or ever informed about it.  (Dkt. No. 18 at 11.)  This argument is likewise unavailing.  *See White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 182-3 (2d. Cir. 2001) (noting that "[f]ederal labor law does not require rank-and-file ratification of employer-union agreements," and where there is no ratification requirement, "the union has no duty to inform the members of the agreement").  Thus, Pena was bound by the terms of the agreement.

Having determined that Section 5 constitutes an enforceable arbitration clause, the Court must next decide "whether the dispute at issue comes within the scope of the arbitration agreement."  *Sollinger*, 2020 WL 774135, at *3 (quoting *In re. Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011)).  Recognizing that the Federal Arbitration Act directs

courts to "respect and enforce agreements to arbitrate," courts "normally resolve any doubts in favor of arbitration." *Abdullayeva*, 928 F.3d at 222 (cleaned up).  But "an exception to the scope presumption applies in the context of a union's waiver of its members' right to bring statutory claims in court." *Id.*  A union may mandate the arbitration of FLSA claims, but such waivers "must be clear and unmistakable." *Id.* (internal quotation marks and citation omitted).

Here, the arbitration provision in the agreement "unambiguously requires" that employees with claims under the FLSA and New York labor laws must submit to the grievance and arbitration procedures described therein. *See id.* at 223 (evaluating an arbitration provision substantially similar to the one here and concluding that the provision covered plaintiff's claims under the FLSA and NYLL).  The provision specifies that it is designed to "ensure compliance with all federal, state, and local wage hour law," and that the grievance and arbitration procedures it describes are meant to be "the sole and exclusive remedy" for employees with relevant claims.  (Dkt. No. 14–3 § 5.)  The provision therefore encompasses Pena's FLSA and NYLL claims in language that is "clear and unmistakable."  *Abdullayeva*, 928 F.3d at 222.

Pena argues that Defendants cannot compel arbitration on the basis of this provision because the provision requires the parties to submit to mediation first.  (Dkt. No. 18 at 21.)  It is true that the multi-step grievance procedure outlined in the agreement requires mediation "before the matter is submitted to arbitration."  (Dkt. No. 14–3 § 5(c).)  But this does not preclude Defendants' motion.  In *Abdullayeva*, for example, the Second Circuit directed the district court to compel arbitration where, as here, the provision in question allowed employees to submit individual claims to arbitration "following the conclusion of mediation."  928 F.3d at 224 (internal citation omitted).

Pena also argues that the provision is unlawful because it requires him to "pay arbitrator costs and legal fees," an expense he would find prohibitive.  (Dkt. No. 18 at 20.)  Under the terms of the provision, however, arbitrator fees are ordinarily "shared equally by the Union and the Employer," meaning that, in most circumstances, the employee would not have to pay anything.  (Dkt. No. 14–3 § 5(d).)  (The same is true of mediation fees.  (Dkt. No. 14–3 §5(c).))  It is only when the union declines to process an employee's claims that the employee would have to pay a share of the fees — and even then, the employee pays nothing if the arbitrator rules in his or her favor.  (*See* Dkt. No. 14–3 § 5(e).)  Pena's argument thus assumes both that the union would decline to represent him and that he would not prevail in arbitration.  "[W]here, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs."  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000).  Pena has not met that burden here.  The risk that Pena would be "saddled with prohibitive costs" is therefore "too speculative to justify the invalidation of an arbitration agreement."  *Id.* at 91.

Proceeding to the third step of the inquiry, the Court concludes that Pena's federal statutory claims are arbitrable.  Indeed, the FLSA claims Pena asserts are precisely the type of claims which courts have held may be arbitrated.  *See Reyes v. Gracefully, Inc.*, 17-CV-9328, 2018 WL 2209486, at *7 (S.D.N.Y. May 11, 2018) (granting motion to compel arbitration and noting that "the Second Circuit has held that nothing in the FLSA evinces an intent from Congress to exempt claims brought under it from the broad policies of the FAA"); *Zambrano v. Strategic Delivery Sols., LLC*, No. 15-CV-8410, 2016 WL 5339552, at *9 (S.D.N.Y. Sept. 22, 2016) ("[C]ourts in this District have consistently found FLSA and NYLL claims to be arbitrable.").

Pena relies on the Supreme Court's holding in *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728 (1981) to argue that an arbitration provision in a collective bargaining agreement cannot preclude employees from asserting their FLSA claims in federal court. (*See* Dkt. No. 18 at 18-20.) In *Barrentine*, the Court held that an employee's unsuccessful arbitration under the provisions of his union's collective bargaining agreement "did not preclude [a] federal lawsuit." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 263 (2009). Unlike the arbitration provision here, however, the "provision under review in *Barrentine* did not expressly reference the statutory claim at issue." *Id.* Since the employees in *Barrentine* and other similar cases "had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions." *Id.* at 264 (internal citation omitted). Where, as here, the arbitration provision expressly covers statutory claims, the provision is enforceable as a matter of law. *Id.* at 264, 274.

Defendants therefore prevail on the first three questions. Because the Court concludes that all of Pena's claims are arbitrable, it need not proceed to the fourth. The only remaining question, therefore, is what remedy is appropriate. Defendants argue for a full dismissal of the case or for a stay pending arbitration. (*See* Dkt. No. 15 at 14-15; Dkt. No. 21 at 15.) The Second Circuit has held that outright dismissal is not appropriate. *See Katz v. Cellco Partnership*, 794 F.3d 341, 346 (2d Cir. 2015) (holding that although "efficient docket management is often the basis for dismissing a wholly arbitrable matter," that prerogative "cannot trump a statutory mandate, like Section 3 of the FAA, that clearly removes such discretion"). Instead, where, as here, all of the claims are arbitrable and a stay has been requested, "the text, structure, and

underlying policy of the FAA mandate a stay of proceedings." *Id.* at 347.  Defendants' request for a stay is granted.

**III.     Conclusion**

For the foregoing reasons, Defendants' motion is GRANTED in part, to the extent that Defendants' request to compel arbitration and stay the case is granted.  The case is hereby stayed pending arbitration.

The Clerk of Court is directed to close the motion at Docket Number 12 and to mark this case as stayed.

SO ORDERED.

Dated: July 23, 2021
         New York, New York

                                        _____
                                                         J. PAUL OETKEN
                                                 United States District Judge